**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MITRA VAHIDA,<br><br>*Plaintiff*,<br><br>v.<br><br>MORA NAMDAR, Assistant Secretary for Consular Affairs, *et al.*,<br><br>*Defendants.* | Civil Action No. 26-1674 (RDM) |

# MEMORANDUM OPINION

Mitra Vahida, a dual citizen of Finland and Iran, brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, against Defendants Mora Namdar, the Assistant Secretary of State for Consular Affairs, and Marco Rubio, the Secretary of the U.S. Department of State, challenging Defendants' delay in processing her application for an F-1 nonimmigrant student visa. Dkt. 1 at 8 (Compl. ¶¶ 28–30). Now before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 7. For the reasons that follow, the Court will **GRANT** Defendants' motion and will dismiss the complaint.

## I. BACKGROUND

Plaintiff Mitra Vahida is a dual citizen of Finland and Iran who applied for an F-1 nonimmigrant student visa to pursue a doctorate in electrical engineering at the University of Arizona. Dkt. 1. at 2 (Compl. ¶¶ 1–2); *id.* at 11 (Compl. ¶ 45). An F-1 visa permits a noncitizen to enter the United States temporarily to pursue a full course of study at an approved academic institution. *See* 8 U.S.C. § 1101(a)(15)(F)(i). On March 26, 2025, Plaintiff applied for the visa

by submitting a Form DS-160 to the U.S. Embassy in Helsinki, Finland. Dkt. 1 at 11 (Compl. ¶ 48); *see also* Dkt. 1-4. On April 3, 2025, Plaintiff completed a visa interview with a consular officer at the Embassy. Dkt. 1 at 11 (Compl. ¶ 49). At the conclusion of the interview, Plaintiff received a temporary refusal letter explaining that her application would be placed in administrative processing pursuant to Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g). *Id.* (Compl. ¶ 50); *see also* Dkt. 1-5. Later that day, officials at the Embassy asked Plaintiff to complete a Form DS-5535 to provide supplemental information about her program of study, field of study, and travel plans. Dkt. 1 at 11 (Compl. ¶ 51). Plaintiff promptly supplied the requested information. *Id.* (Compl. ¶ 52).

Since Plaintiff's April 3, 2025, interview, the Consular Electronic Application Center's website has reported the status of Plaintiff's visa application as "Refused." Dkt. 1 at 14 (Compl. ¶ 69); Dkt. 1-8 at 1. An accompanying notice states that "[a] consular officer has adjudicated and refused your visa application." Dkt. 1-8 at 1. It further explains: "[i]f you were informed by your consular officer that your case was refused for administrative processing, your case will remain refused while undergoing processing. You will receive another round of adjudication once such processing is complete." *Id.* The notice adds that "processing time varies" and that Plaintiff "will be contacted if additional information is needed." *Id.*

Plaintiff's application has remained in administrative processing since that interview—now more than eighteen months ago. Dkt. 1 at 2 (Compl. ¶ 4); *id.* at 12 (Compl. ¶ 53); *see* Dkt. 7 at 9 (acknowledging that the application remained pending for "approximately 13 months" between the refusal and the filing of suit). Plaintiff alleges that this delay stems, at least in part, from Defendants' failure to complete a Security Advisory Opinion that she contends is required

for Iranian nationals seeking U.S. visas. Dkt. 1 at 2 (Compl. ¶¶ 6–7); *id.* at 15–16 (Compl. ¶¶ 77–78).

After submitting several inquiries regarding the status of her visa application to the Helsinki Nonimmigrant Visa Unit, *Id.* at 12 (Compl. ¶¶ 56–58); Dkt. 1-6, Plaintiff filed this action. Dkt. 1. Plaintiff alleges that Defendants' delay in processing her visa application has caused her "significant financial hardship" and "emotional and mental suffering," and threatens her ability to begin her doctoral program. *Id.* at 13–14 (Compl. ¶¶ 63–68). Plaintiff seeks relief under the Mandamus Act, 28 U.S.C. § 1361, and the APA, 5 U.S.C. § 706(1), together with declaratory and injunctive relief. *Id.* at 18–23 (Compl. ¶¶ 85–116); *id.* at 23–24 (Compl. Prayer). She requests a court order compelling Defendants to complete the adjudication of her visa application "within 30 days." *Id.* at 24 (Compl. Prayer ¶¶ A–B).

Pending before the Court is Defendants' motion to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).[1] Dkt. 7. The motion is fully briefed and ripe for consideration. *See* Dkt. 7; Dkt. 8; Dkt. 9.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction to hear the plaintiff's claim and may take one of two forms. First, a Rule 12(b)(1) motion "may raise a

[1] Defendants argue that Local Civil Rule 7(n)'s requirement that the agency file a certified list of the contents of the administrative record with the filing of a dispositive motion does not apply because Plaintiff challenges agency inaction, not final agency action. Dkt. 7 at 25–26 n.3. This Court has previously rejected Defendants' argument that Local Civil Rule 7(n) does not apply to undue-delay claims. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 104–05 (D.D.C. 2024). Nonetheless, because the Court "concludes that the administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss," it will waive compliance with Local Civil Rule 7(n). *Id.* at 105.

'facial' challenge to the Court's jurisdiction." *Hale v. United States*, No. 13-1390, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015). A facial challenge asks whether the complaint alleges facts sufficient to establish the court's jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018). In this posture, the Court must accept the factual allegations of the complaint as true and must construe them in the light most favorable to the non-moving party. *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006) (collecting cases).

"Alternatively, a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction." *Hale*, 2015 WL 7760161, at *3. When a motion to dismiss is framed in this manner, "the [C]ourt may not deny the motion . . . merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). "The [C]ourt has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," so long as it "afford[s] the nonmoving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks and citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), in contrast, "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that

is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)). The complaint need not include "detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). The Court may consider only "the facts contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

## III. ANALYSIS

At the conclusion of Plaintiff's visa interview, the consular officer refused her visa application pursuant to INA § 221(g), Dkt. 1 at 11 (Compl. ¶ 50); Dkt. 1-5, which provides that "[n]o visa or other documentation shall be issued to an alien if . . . it appears to the consular officer . . . that such alien is ineligible to receive a visa," 8 U.S.C. § 1201(g). A refusal pursuant to INA § 221(g) is based on a consular officer's determination that the applicant has failed to carry her burden of establishing that she is eligible for a visa. When an application is insufficiently supported, however, "a consular officer may determine that additional information . . . may help establish an applicant's eligibility for a visa." U.S. Department of State, Administrative Processing Information, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (https://perma.cc/G6GV-A2TN). If so, the consular officer may place the refused application in

administrative processing, which enables the officer to "re-open and re-adjudicate the applicant's case" upon the receipt of new information showing that the applicant has become eligible for a visa. *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024).

That is what happened here. The consular officer placed Plaintiff's application into administrative processing, where it has remained for over eighteen months. Plaintiff now seeks relief for Defendants' alleged failure "to complete the administrative processing that they themselves acknowledge remains ongoing," Dkt. 8 at 2; that is, she seeks an order compelling Defendants to complete that processing and to reach the further adjudication she contends will follow. She brings claims under the Mandamus Act and the APA, both of which authorize federal courts to compel an agency to act when the agency has violated "a clear duty to act." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks and citation omitted). Defendants urge the Court to dismiss Plaintiff's claims for three reasons. First, they argue that Plaintiff's claims fail because she does not identify a discrete agency action that a consular officer was required, but failed, to take. Dkt. 7 at 11–15. Second, they argue that Plaintiff's claims are barred by the consular nonreviewability doctrine. *Id.* at 16–19. Finally, they argue that Plaintiff has failed to state a plausible claim that the adjudication of her visa application has been unreasonably delayed. *Id.* at 19–25. Because the consular nonreviewability doctrine is not a jurisdictional defense, *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1028–29 (D.C. Cir. 2021), the Court will begin and end with Defendants' first argument.

Defendants seek dismissal of Plaintiff's claims on the ground that Plaintiff "cannot identify a clear, non-discretionary duty requiring a consular officer to take any action on the Visa Application now that it has been refused under INA Section 221(g)." Dkt. 7 at 11. That argument implicates Plaintiff's claims under both the Mandamus Act and the APA. When a visa

applicant seeks to compel a decision on her application, "'the standards for obtaining relief' under the Mandamus Act and the APA are 'essentially the same.'" *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (quoting *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010)).

The Mandamus Act provides that district courts "shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "The 'remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances.'" *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) (quoting *Allied Chemical Corp. v. Dafilon*, Inc. 449 U.S. 33, 34 (1980)). "To show entitlement to mandamus, [a plaintiff] must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). Mandamus relief is therefore appropriate only where a defendant owes the plaintiff "a clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (citation modified). The APA, in turn, authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). But the Supreme Court has clarified that "the only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (emphasis in original). Like a claim for mandamus relief, then, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* at 64 (emphasis in original). The two claims differ in that a plaintiff's failure to identify a clear nondiscretionary duty poses a jurisdictional hurdle for mandamus relief, *see Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020), but goes to the

merits of an APA § 706(1) claim, *see L'Association des Americains Accidentels v. United States Dep't of State*, 633 F. Supp. 3d 74, 80 (D.D.C. 2022).

Here, Plaintiff relies on 5 U.S.C. § 555(b) to establish that Defendants have a mandatory duty to take her visa application out of administrative processing and to complete the adjudication she contends remains outstanding. *See* Dkt. 8 at 6. Defendants, in turn, contend that § 555(b) does not require them to re-adjudicate Plaintiff's already-refused application. They principally rely on the D.C. Circuit's unpublished decision in *Karimova*, which affirmed a district court's dismissal of a claim materially identical to the one before the Court.

As in this case, the *Karimova* plaintiff's visa application had been refused by a consular officer pursuant to INA § 221(g) and placed in administrative processing. 2024 WL 3517852, at *1–2. The plaintiff sought a court order compelling the consular officer to "re-adjudicate her already-refused application and, this time, to do it without subsequently retaining the application." *Id.* at *3. To show that the consular officer had a duty to re-adjudicate her visa application, the plaintiff relied exclusively on 5 U.S.C. § 555(b), which provides that "each agency shall proceed to conclude a matter presented to it [w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." *Id.* (alterations in original, internal quotation marks and citation omitted). The *Karimova* court rejected the plaintiff's argument, reasoning that § 555(b) "simply expresses 'a congressional view that agencies should act within reasonable time frames,'" while "leav[ing] officials ample room for judgment based on the circumstances." *Id.* (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*")). The court further explained that the "generality and indistinctness" of § 555(b) posed "particularly acute problems" for the plaintiff given "our starting point . . . that consular officers have broad discretion when adjudicating visa

applications" and the "background principle of judicial abstinence" from reviewing consular decisions. *Id.* at *4, *6.

*Karimova* is an unpublished opinion, and decisions of this Court have disagreed about its precedential force. *Compare Ibrahim v. Spera*, No. 23-3563, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (treating *Karimova* as precedential), *with Hajizadeh v. Blinken*, No. 23-1766, 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (declining to treat *Karimova* as precedential); *see also Seifan v. Sweeney*, No. 25-261, 2025 WL 2171093, at *3 (D.D.C. July 31, 2025) (collecting district court cases splitting on the precedential effect of unpublished circuit decisions). But even if *Karimova* is non-precedential, the Court finds its reasoning persuasive and concludes that § 555(b) does not impose a clear legal duty on consular officers to re-adjudicate a visa application that has been refused and placed in administrative processing.

Plaintiff's principal response is that this case is different from *Karimova* because Defendants have "acknowledge[d]" that her application remains in an ongoing administrative process and have "represented that another adjudication will occur" once that process is complete. Dkt. 8 at 2–3, 5. She points to the Embassy's statement that her application was refused "for additional administrative processing" and that, upon completion, the consular officer "could" find her qualified and request her passport, *id.* at 5; Dkt. 1-6, as well as to the Consular Electronic Application Center's advisory that an applicant in her posture "will receive another adjudication once such processing is complete," Dkt. 1 at 14 (Compl. ¶ 69). From this, Plaintiff reasons that she seeks only to compel completion of a process Defendants themselves initiated, not to compel any particular substantive result.

That argument does not distinguish *Karimova*. The *Karimova* plaintiff likewise sought only to compel the consular officer to reach a further "final decision" on an already-refused

application, not to compel issuance of a visa, and the D.C. Circuit held that no law "plainly prescrib[es]" such a duty. 2024 WL 3517852, at *3. And the specific language on which Plaintiff relies does not suffice to distinguish her case. This Court confronted the identical Consular Electronic Application Center advisory in *Al-Saedi v. Nepal* and applied *Karimova* notwithstanding it. No. 25-1113, 2026 WL 764575, at *1, *3 (D.D.C. Mar. 18, 2026). Similarly, another decision in this district held that the representation that an applicant "will receive another adjudication" does not render such a case "meaningfully distinguishable" from *Karimova*. *Hurtado v. Foley*, No. 24-3270, 2025 WL 2757557, at *2, *4 (D.D.C. Sept. 29, 2025). The reason is straightforward: an agency's decision to retain a refused application "in case circumstances later change in the applicant's favor" reflects the very discretion *Karimova* recognized, and retention of the application "sav[es] the applicant the time and cost of filing a whole new visa application"—it does not convert an optional, follow-on reconsideration into a clear, nondiscretionary duty. *Karimova*, 2024 WL 3517852, at *4. That Defendants "could" complete further processing and "could" then find Plaintiff eligible confirms the point; a step the consular officer *may* take is not a discrete act the officer is "required to take." *Norton*, 542 U.S. at 64.

Nor does Plaintiff's suggestion that the outstanding processing "involves" a mandatory Security Advisory Opinion supply the missing duty. Dkt. 8 at 6. Plaintiff grounds that asserted duty in various provisions of the Foreign Affairs Manual ("FAM"). *See* Dkt. 1 at 9 (Compl. ¶¶ 37–38); *id*. at 16 (Compl. ¶ 78). But "the FAM is an internal policy document issued by the Department of State that describes, as relevant here, how it interprets consular officers' responsibilities under the INA to issue or refuse a visa application, and how consular officers may implement those responsibilities in the field." *Ulianov v. Rubio*, No. 24-3443, 2025 WL

1865111, at *9 n.9 (D.D.C. July 7, 2025); *see also* 22 C.F.R. § 5.5. The guidelines in the FAM do not themselves "carry the force of law." *Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 16 (D.D.C. 2022). The agency's explanation of how it will exercise its discretion to adjudicate visa applications does not, standing alone, impose any mandatory duty on Defendants to act on a specified timeline enforceable under the Mandamus Act or the APA. *Ulianov*, 2025 WL 1865111, at *9; *Babamuradova*, 633 F. Supp. 3d at 16.

Plaintiff contends that the agency must complete a Security Advisory Opinion as "a mandatory component of the adjudicatory process applicable to her application." Dkt. 8 at 6. Even assuming that the Security Advisory Opinion is required to complete administrative processing, Plaintiff still must establish that the administrative processing is itself mandatory. She has not done so; her argument about the mandatory nature of the Security Advisory Opinion merely begs the question. As Plaintiff's submission indicates, Dkt. 1-8, Plaintiff has received a refusal, and her application "remains officially refused" "[u]nless and until" a consular officer decides to "re-open and re-adjudicate [her] case." *Karimova*, 2024 WL 3517852, at *2.

Finally, Plaintiff relies on the regulations governing nonimmigrant visa adjudication, 22 C.F.R. §§ 41.106 and 41.121(a), to establish a mandatory duty. Dkt. 1 at 20, 22 (Compl. ¶¶ 96, 107). Section 41.121(a) provides that, once a nonimmigrant visa application "has been properly completed and executed . . . the consular officer must issue the visa [or] refuse the visa" on a ground specified in law, and Section 41.106 directs consular officers to "ensure that the [application] is properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. §§ 41.106, 41.121(a). Section 41.121(a) is the nonimmigrant-visa analogue of 22 C.F.R. § 42.81(a), the immigrant-visa provision the D.C. Circuit construed in *Karimova*, and it carries the same consequence here. As the D.C. Circuit explained of the

parallel regulation, once a consular officer refuses an application under Section 221(g), the applicant has "received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application." 2024 WL 3517852, at *4 (citation modified). The consular officer's regulatory duty to issue or refuse Plaintiff's application was therefore discharged when the officer refused it under Section 221(g).

Section 41.106 does not alter the analysis. Although it directs that an application be processed "properly and promptly," 22 C.F.R. § 41.106, that generalized instruction supplies no "clear and indisputable" duty to complete administrative processing within any defined period, *Am. Hosp. Ass'n*, 812 F.3d at 189. The regulation's direction that officers act "promptly" is no more specific than the "reasonable time" language of § 555(b), which the D.C. Circuit held "leav[es] officials ample room for judgment based on the circumstances." *Karimova*, 2024 WL 3517852, at *3 (citation modified). Nothing in either regulation requires a consular officer to reconsider a refused application placed in administrative processing, much less to do so within a particular timeframe.

As the D.C. Circuit stressed in *Karimova*, claims challenging the visa adjudication process are "not standard administrative fare." *Id.* at *5. They arise "within a field that is 'vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power.'" *Id.* (alteration in original) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952)). For that reason, the "admission and exclusion of foreign nationals" is "largely immune from judicial control." *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (citation modified). In this context, the Court cannot find "a crystal-clear legal duty," *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (citation modified), or a "legally required" duty to act on a particular timeframe, *Montanans for Multiple Use v.*

*Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009), where a consular officer has reviewed an application, has refused it, and has placed the application in further administrative processing.

The absence of a clear, non-discretionary duty (1) to re-adjudicate Plaintiff's visa application or (2) to do so within a specified timeframe is dispositive of Plaintiff's claims under both the Mandamus Act and the APA. The Court thus need not consider the applicability of the consular nonreviewability doctrine or whether Plaintiff can establish undue delay based on the TRAC factors.[2] The Court will, accordingly, grant Defendants' motion to dismiss.

[2] The Court has previously explained that "the consular non[]reviewability doctrine does not bar review of undue-delay claims related to visas mired in administrative processing." *Janay*, 743 F. Supp. 3d at 110 (citation modified); *see also Al-Gharawy*, 617 F. Supp. 3d at 11–17. The analysis set forth above has no bearing on that conclusion. Deciding whether consular officers have unfettered discretion over the process for reviewing visa applications requires a fundamentally different analysis than determining whether consular officers have a "crystal-clear legal duty," *In re Ctr. for Biological Diversity*, 53 F.4th at 670 (citation modified), to perform the action at issue here. And contrary to Defendants' suggestion, Dkt. 7 at 16–19; Dkt. 9 at 12–13, *Karimova* did not conclusively resolve the applicability of the consular nonreviewability doctrine to undue-delay claims. *Karimova* explicitly reserved the question whether the doctrine of consular nonreviewability "applie[d] in [that] case." 2024 WL 3517852, at *6.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, Dkt. 7, is hereby **GRANTED**. The Court will **DISMISS** Plaintiff's Mandamus Act claim for lack of subject-matter jurisdiction under Rule 12(b)(1) and her APA claim for failure to state a claim under Rule 12(b)(6).

A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: October 15, 2026